## Mary W. Kearney v. Ætna Life Ins. Co.

1. PLEADINGS—*Not Error to Reject Evidence Offered to Prove Something Different from Allegations.*—It is not error to reject evidence offered to prove something wholly different from the allegations in the pleadings.

2. INSURANCE—*Where the Payment of Premiums by the Insured is a Condition Precedent to the Assuming of an Obligation by the Company.*—Under a policy providing that there shall be no insurance under this policy unless the premium is actually paid prior to any accident by reason of which claim is made, the payment of premiums is a condition precedent to, or at least concurrent with, the assuming of any obligation by the insurance company.

3. SAME—*No Question of a Forfeiture Where Policy Lapses Because of Non-payment of Premiums.*—There is presented no question of for-

feiture where a policy by its express terms ceases, because of non-payment of a premium.

4.  SAME—*How Lapsed Policy May be Renewed.*—A lapsed policy can only be restored to life, so far as the insured is concerned, by the actual payment and acceptance of the premium, or a contract based upon a sufficient consideration.

5.  PRINCIPAL AND AGENT—*Burden is upon Plaintiff to Show Agency of Party Contrary to Express Terms of Policy.*—The burden is upon plaintiff to show the authority of a clerk to bind an insurance company in the face of and contrary to the express terms of the policy.

6.  EVIDENCE—*When Declarations of Insured May be Shown.*—A conversation between a collector of an insurance company and the deceased insured is admissible to show the conclusion to which the insured had come concerning paying premiums on his policy.

Assumpsit, on an accident policy of insurance. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed October 8, 1903.

This is an action in assumpsit to recover for a death loss under an accident policy issued to T. P. Connell, in which appellant was named as beneficiary. At the close of all the evidence the court gave a peremptory instruction to find the issues for the defendant. Judgment was entered on the verdict and the plaintiff appealed.

The declaration consisted of two special counts and the common counts for money loaned and advanced by plaintiff to the defendant, etc. The first special count avers the making of the policy in question, which is set forth *in haec verba;* that it was issued for a term of three months, to wit, from February 2, 1898; that on May 2, 1898, in consideration of the payment of the further sum of $12.50 the defendant continued said insurance for the further term of three months; that on July 12, 1898, the insured, while driving a horse, was accidentally thrown from the conveyance in which he was riding, whereby he received injuries from which he died July 17, 1898, to the damage of the plaintiff in the sum of $13,000. The second special count sets up the making of the said policy; that it was the custom of the company to renew policies in consideration of indebtedness incurred for the renewal premium, and to

Kearney v. Ætna Life Ins. Co.

accept payment of the same at any time during the renewal period; that Connell knew of this custom; that defendant then and there informed Connell said custom would continue in force and would constitute a part of said policy; that it informed Connell that, regardless of any phrases or clauses in said policy, it would consider and hold said policy in force after the last day of its term; that it informed Connell it would charge the amount to be paid for the renewal to his account, and that he might pay the same when convenient; that on May 2, 1898, the last day of the term of the original policy, defendant, at the request of Connell, in accordance with said custom and agreement, and in consideration of the indebtedness which was then and there (May 2d) incurred by Connell in the amount of $12.50, and accepted by the defendant as premium, continued the policy for three months from said date; and that defendant afterward, June 21, 1898, notified Connell of its continuance of the policy by writing him, "We issued the renewal on your insurance May 2."

The defendant pleaded the general issue.

M. HENRY GUERIN, attorney for appellant.

DANIEL F. FLANNERY, attorney for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

This policy of insurance ran "for the term of three months from noon of the second day of February, 1898." Hence, unless renewed, it expired by its terms at noon of May 2, 1898.

The first count alleges that on May 2, 1898, the company, in consideration of the payment of the further sum of $12.50, continued said insurance for the further term of three months. This continuance, or renewal, if made, includes both the date of the accident and the date of the death of Connell. But upon the trial there was no evidence offered tending to prove the payment of this "further sum of $12.50," or of any other sum, and hence there could be no recovery under this count.

The second count sets up that on May 2, 1898, at the request of Connell and in accordance with its custom and a prior agreement made by it with Connell, and in consideration of the indebtedness which was then and there incurred by Connell in the sum of $12.50, and accepted by the company as premium, the company continued the policy for the term of three months from May 2, 1898. There was no attempt to prove under this count that Connell ever agreed to pay the premium for the second quarter. What was attempted to be proven was the alleged custom of the company to receive payments on renewals at any time within three months of the renewal, and that they held out to the people dealing with them that the policies were in force. To this evidence, and also to the offer to prove the same by the witness Kearney, objections were interposed, and were sustained by the court. If the second count sets up an express agreement to renew (as we think it does), then the custom of the company, if any it had, as to renewals, was immaterial. If it sets up and relies upon a custom, that custom is to renew policies "upon their expiration" in consideration of indebtedness incurred by the insured for the renewal premium, which sum he might pay at any time during the renewal life of the policy. The offer made was of a custom to accept the renewal premium at any time within three months after the policy, by its terms and according to the strict letter, appeared on its face to expire. It does not contain an offer to prove an agreement made by Connell before or upon the expiration of the policy, or at any other time, to pay the premium for the second quarter. Appellant did not offer to prove the averments of the second count, but did offer to prove something other and wholly different. Hence the offer was properly rejected. Russell v. Lake, 68 Ill. App. 440; Bell v. Senneff, 83 Ill. 125; L. S. & M. S. Ry. Co. v. Live Stock Bank, 178 Ill. 523.

The policy contained two provisions which bear upon this offer:

"1.  There shall be no insurance under this policy unless

the premium is actually paid prior to any accident by reason of which claim is made;" and " 9. No agent has authority to waive any condition of this policy, and no waiver will be recognized unless in writing, signed by either the president, vice-president, secretary or assistant secretary of the company."

There was no offer upon the part of appellant to show that the policies to which the custom applied contained these conditions or either of them.

The policy here involved, by its terms expired at noon of May 2, 1898. After that date all liability thereon ceased, unless it was renewed. Without either payment of, or promise to pay, the renewal premium, there could be no renewal. The question here is not as to the right to forfeit a policy in existence, but is as to the right to renew a policy which has lapsed.

" That the payment of premiums by the insured is a condition precedent to, or at least concurrent with, the assuming of any obligation by the insurance company, under terms such as are embodied in this policy, seems beyond question. Parker v. Bankers' Life Assn., 86 Ill. App. 322. ' It was his duty, if .he desired to continue the policy, to have paid the installments, and his failure to do so terminated the policy. It is really a misnomer to say that the policy in this instance was forfeited by the non-payment of the premium. The insurance, by the express terms of the policy, ceased because of such non-payment.' * * * Nor can the contention of counsel be sustained, that the facts of this case present a waiver of a forfeiture. There is presented no question of forfeiture. Beyond May 14, 1899, there was never any contract of insurance effected; there was nothing to be forfeited, and consequently no forfeiture to be waived." Roberts v. Ætna L. Ins. Co., 101 Ill. App. 313.

" A lapsed policy can only be restored to life, so far as the assured is concerned, by the actual payment and acceptance of the premium, or a contract based upon a sufficient consideration. What consideration did the company receive for carrying this risk from the 19th of February to the 9th of March ? Had the insured lived until the latter date, and then neglected or refused to pay his premium, he would have had the benefit of an insurance on his life without paying a dollar of consideration. For, as before stated, he did not give anything nor did he promise anything. It was optional with him to pay; the

company could not have enforced it against him had he declined. There is no provision in the policy which covers the case. If the insured does not pay, the policy drops and the contract relation ceases." Lantz v. Vermont L. I. Co., 139 Pa. St. 546.

It was urged that the company, before the first quarter expired, charged the second quarterly payment to the local agent, French, and that the latter afterward paid such sum to the home office, and that this constituted a renewal of the policy. The evidence does not sustain this contention. It appears from the record that it was the custom of the company to send out from the home office, a month preceding the expiration of each policy, a renewal receipt covering the time of its next renewal. As they were sent out these receipts were charged to the local agent. The month following its maturity, the local agent made up his accounts, sending back either the receipt or the money representing it, thus balancing his account. In this case such a renewal receipt was sent to French on April 14, 1898, eighteen days before the sum named therein became due, was never delivered to deceased, and was returned unpaid, and was received at the home office and credited July 11, 1898, the day before the deceased was injured.

This receipt was afterward attached to the deposition of W. C. Faxon, a witness called by appellee, and thus became a part of the files in the court below. Appellant offered the receipt in evidence as a separate exhibit. Standing apart from the deposition and from the circumstances attending its coming into the hands of appellant, it tends to prove a case under the first count of the declaration. But when those circumstances were made known, its probative force was wanting.

Appellant claims that French, the Chicago agent, waived the provision as to prepayment, extended credit for the renewal premium, and mailed notice to Connell to that effect, stating therein : " We issued the renewal on your insurance May the 2d; " and that this in itself was a renewal, which estops both the agent and the company.

It appears that when the renewal receipt reached the local agent it was countersigned and handed to his son, a clerk in his office, for collection. The latter called upon Connell in May and told him his insurance had expired, and asked him if he did not wish to renew it. Connell said that he was very busy, and that he would see him a few days later. June 2, 1898, young French wrote the following letter upon the stationery of the company:

"CHICAGO, June 21, 1898.
MR. T. P. CONNELL, 1607 Michigan Avenue, City.

DEAR SIR:—I called on you some time ago in reference to your insurance and at that time you stated you would give it your attention in a few days. Will you kindly send me a check for $12.50, or instruct my old friend Kearney to take care of this little matter for you. We issued the renewal on your insurance May the 2d. Please let me hear from you.

Yours truly,
GEORGE T. FRENCH, JR."

At the time this letter was written young French was a collector and clerk in his father's office. No authority is shown in him to renew insurance. When the premium was paid, and not until then, he had the right to deliver the renewal receipt. The burden was upon appellant to show the authority of that clerk to bind the company in the face of and contrary to the express terms of the policy.

A week after this letter was sent, young French again called upon Connell and asked him if he wished to renew the insurance. The reply of Connell was no, he did not. It was about two weeks after this last conversation that the renewal receipt was returned to the home office of the company as a void or "spoiled" receipt.

It is objected that the conversation between the collector and the deceased was incompetent, because it was not had in the presence of appellant. At that time she had no control over the policy. She could not renew it nor destroy it. Connell was then the real party in interest. He could keep it alive or let it lapse, as he chose. It was competent

for appellee to show the conclusion to which Connell came concerning this policy. Van Frank v. U. S. B. Assn., 158 Ill. 566.

The remainder of this contention is answered by the statement that, under the evidence, the Chicago agent did not waive the provision of the policy as to prepayment, did not extend credit for the renewal premium, and did not mail to Connell any notice to that effect.

A full consideration of the record shows that the trial court committed no reversible error. We therefore affirm the judgment of the Circuit Court.