CHICAGO—FIRST DISTRICT—NOVEMBER, 1909.    507

MacArthur v. U. S. Health and Accident Ins. Co., 151 Ill. App. 507.

John E. MacArthur, Defendant in Error, v. United States Health and Accident Insurance Company, Plaintiff in Error.

## Gen. No. 14,626.

INSURANCE—*when failure promptly to pay premium causes policy to lapse.* If a contract of accident insurance is for a limited or indefinite period and expires from time to time, subject to renewal at the option of both parties, by the failure to pay an additional premium, essential to the renewal of the insurance, causes a lapse of the policy.

*Assumpsit.* Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed November 19, 1909.

**Statement by the Court.** A trial by jury having been had and a verdict for plaintiff returned, a judgment was rendered against the defendant, plaintiff in error here, for $162, upon an accident insurance policy. Plaintiff below, a dentist, to whom the policy was issued, suffered an accident on March 5, 1907. A tooth upon which he was working broke and the excavator he was using ran underneath the nail of the index finger of his right hand. He was disabled for some time.

Plaintiff and J. V. E. Wyatt, the agent of the defendant company, were members of the same lodges of Odd Fellows and Eagles. Wyatt had solicited plaintiff to take out the policy. Plaintiff while being solicited told Wyatt: "I haven't got the money." But Wyatt, to induce plaintiff to insure, said: "That's all right; you can give me this premium any time you meet me at the Odd Fellows or Eagles and it will be all right—any time that you have it, and can spare it, pay it. This will continue your policy in force until the first of August. That ought not to be very hard for you to meet now. And on the first of August premium and [then] two seventy-five a month." To this plain-

508     APPELLATE COURTS OF ILLINOIS.

MacArthur v. U. S. Health and Accident Ins. Co., 151 Ill. App. 507.

tiff answered: "I may not be able to hand this over to you the first of the month?" Whereupon Wyatt replied: "That's all right; any time, just drop over and pay it to me, and I will keep your policy in force." Thereafter the parties entered into the contract, evidenced by the policy dated June 21, 1906. The negotiation for the policy took place at the doctor's office. Subsequently the policy, on the date it bears, was delivered at Wyatt's office. The contract provides that upon certain stated considerations the company "Does hereby insure the person described in said schedule, subject to all of the conditions herein contained and endorsed hereon, from 12 o'clock noon, standard time, of the day this contract is dated, until 12 o'clock noon, standard time, of the first day of August, 1906, and for such further periods, stated in the renewal receipts, as the payment of the premium specified in said schedule will maintain this policy and insurance in force." Thereafter the policy specifies the different indemnities or amounts which will be paid by the company in the event the insured sustains any of certain different kinds of injuries. The policy also contains a provision as follows: "An agent has no authority to change this policy nor waive any of its conditions. Notice to or from any agent or knowledge acquired by him shall not be held to effect a change or waiver of this policy or any condition thereof. No * * change in this policy or waiver of any of its conditions shall be valid unless agreed to in writing by the president, vice-president or secretary of the company and endorsed hereon." Upon the back of the policy we find the following:

"This Policy is issued to and accepted by the Assured subject to the following conditions:

(1) If the payment of any renewal premium shall be made after the expiration of this policy or the last renewal receipt, neither the assured nor the beneficiary will be entitled to recovery for any accidental injury happening between the date of such expiration and 12

o'clock noon, standard time, of the day following the date of such renewal payment; nor for any illness originating before the expiration of thirty days after the date of such renewal payment. The acceptance of any renewal premium shall be optional with the company."

Upon the back of the policy we also find a copy of plaintiff's application for the insurance and therein, over plaintiff's signature, the following agreement: "I understand and agree that * * * the company is not bound by any knowledge of or statements made by or to any agent unless written hereon. I further agree to accept the policy subject to all its conditions and pay the monthly premium of two and seventy-five hundredths dollars, in advance, without notice."

Plaintiff did not pay the first premium, for the issuance of the policy, until some time in July. There is no evidence of the payment of any premium for the month of August and, therefore, so far as the record shows, MacArthur carried no insurance for that month.

The next premium was paid August 28, 1906, when a receipt was given, worded as follows:

"SOUTH CHICAGO ILL., DIVISION, August 28, 1906.

Received of J. E. MacArthur two and seventy-five-hundredths dollars, continuing in force policy No. 435,-927 from date hereof until the first day of October, 1906, subject to all the provisions and conditions of said policy.

J. V. E. WYATT,
Form 125.                                    Local Collector."

The period for which insurance was given for this $2.75, paid August 28, the writing expressly states to be "from the date hereof until the first day of October, 1906."

Plaintiff appears to have paid the next premium on December 14, 1906, and he then received a receipt worded as follows:

510        APPELLATE COURTS OF ILLINOIS.

MacArthur v. U. S. Health and Accident Ins. Co., 151 Ill. App. 507.

"UNITED STATES HEALTH AND ACCIDENT INSURANCE CO.,
SAGINAW, MICH.

SOUTH CHICAGO, ILL., DIVISION, Dec. 14, 1906.

Received of Dr. MacArthur five and fifty-hundredths dollars, continuing in force policy No. ———— from date hereof until the first day of January, 1907, subject to all provisions and conditions of said policy.

J. V. E. WYATT,
Local Collector."

Respecting this November and December payment plaintiff testified he had met Wyatt at a lodge meeting, in December, and had then told him that "I had been going to send him over the premium for November and December, but I had not yet done so," and Wyatt answered "That's all right, doctor, any time you happen to be over in South Chicago buying your Christmas presents drop into the office and pay me your premium," to which plaintiff then replied: "All right; I was a little bit short of money but I will do so." As a matter of fact this premium was not paid until it was called for, by Mrs. Wyatt, at the doctor's office. The writing expressly states that the money paid this time continued this policy from the date of the writing, December 14, 1906, to January 1, 1907.

The doctor testified that he paid no premium "for the month of January, 1907, or during the month of January, 1907." He testified he did pay a premium during the month of February. Except as plaintiff testified he paid the premium "during" that month there is no evidence as to when it was paid, what exact period it was paid for, nor what writing, if any, was given when it was paid.

A postal card from the company, postmarked February 23, 1907, was sent to and received by plaintiff. Upon that postal card, among other things, the following was printed: "Your March premium of $2.75 on policy No. 435,927 is due and must be paid to J. V. E. Wyatt, 9154 Commercial Ave., South Chicago, Ill., on or before March 1, 1907, or your policy and insurance

will be void." "The payment, as directed, of the premium specified in this notice will continue in force the aforesaid policy from date of payment until the first day of April, 1907, subject to all the provisions and conditions of said policy." Below was endorsed: "Received Payment. J. V. E. Wyatt, Local Collector."

On March 11, 1907, after he was injured, plaintiff sent a postoffice money order by mail to Wyatt, in payment of this March premium and Wyatt returned to him, by mail, receipted and signed, the above postal card which plaintiff had evidently forwarded with his money order. There is no pretense of any conversation or express understanding regarding the payment of the March premium. When MacArthur paid the premium, on March 11, 1907, the company had no information of his having met with an accident.

UTT BROS., for plaintiff in error.

MASON & WYMAN, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The theory of contract upon which plaintiff, MacArthur, seeks to recover in this case appears to be that the company was insuring him against accident continuously, from the time the policy was issued, for an indefinite period and that premiums were payable monthly, in advance, but that prompt payment of premiums had been waived. If such contract has been shown it must have arisen by estoppel for no such contract is expressed by or can be implied from the writings between the contracting parties.

Plaintiff's attorneys contend that in view of the facts of the case and of the terms of the policy "there was either a waiver by the company of the terms of its policy requiring prompt payment of premiums, or, there was not such waiver and the policy was in force

512 · APPELLATE COURTS OF ILLINOIS.

MacArthur v. U. S. Health and Accident Ins. Co., 151 Ill. App. 507.

March 5, 1907, according to the terms thereof," and that proposition, having been presented, is argued as if the question of waiver or no waiver were the question which determined whether or not the original policy was in force at the time MacArthur sustained his injury. The proposition appears to us to overlook the real question in the case, that is, the real nature of the contractual relation between the parties.

It is doubtless true that courts do not regard forfeitures with favor and will not enforce forfeitures on account of failure to make payments upon contracts promptly unless the evidence is clear that such was the intention of the parties. But is there any question of a failure to promptly make payment upon an existing contract involved here?

It is also true that if the practice and course of conduct of the payee in a contract has been such toward the payor as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted upon, or if the payee has given any express assurance that such forfeiture will not be insisted upon, the payee will not be allowed to set up such forfeiture as against one in whom such practice, course of conduct or assurance has induced such belief. But is there any question of a forfeiture involved here?

The principle that enables courts to act and upon which courts do act, when they prevent and refuse to enforce a forfeiture where a payee has induced in the mind of the payor the belief, upon which the payor has acted, that there would be no forfeiture for failure to make payments promptly, is the doctrine of estoppel *in pais*. This case now before us, however, is not an instance of a policy providing for the payment of premiums from time to time or a premium in instalments.

The contract we have before us in the case at bar does not contain any provision for forfeiture, because of lack of promptness in payment, which the defendant company can have become estopped from availing it-

self of by acts, conduct or assurance. Plaintiff, in reality, is seeking to raise or create, by estoppel, in contradiction of the writings between the parties, a contract between the parties covering the period from March 1, 1907, to March 12, 1907, so as to cover March 5, 1907, the day he was injured. This case, in our judgment, involves no question of an estoppel of a forfeiture of an existing contract.

The policy involved, itself, does not purport to insure MacArthur against accidents beyond August 1, 1906. The original contract, by its own terms, expired absolutely on August 1, 1906. True, that original contract provided for renewals from time to time for such further periods or lengths of time, as payments of premiums, which the insured might make, would maintain the policy and insurance in force. But all renewals were optional with MacArthur and, also, as expressly stated, with the company. It is most elementary that there can be no contract without a meeting of the minds of parties. When the original contract expired, and, thereafter, at each expiration of a renewal, it became necessary for the minds of the parties to meet; otherwise there was here no renewal and, according to the expired contract, no insurance. Each renewal was in fact and in legal contemplation a new contract, not very formally made, it is true; but formality was unnecessary. At each renewal a receipt was given for the new premium. These receipts were something more than mere receipts, for they expressed and evidenced the terms of the new contract in so far as not evidenced by the original expired contract. Each renewal involved as a new provision, to be agreed upon, the length of time for the continuance of the new contract. The case of Kearney v. Aetna Life Ins. Co., 109 Ill. App. 609, is a case where an accident policy contained a provision that "There shall be no insurance under this policy unless the premium is actually paid prior to any accident by reason of which claim is made." In that case plaintiff attempted to prove a

custom on the part of the company to receive payments on renewals at any time within three months of the expiration and, further, that the company held out to those dealing with it that the policies were in force in the interval before payment. Speaking of the proposition which arose in that case the court said (p. 613): "The question here is not as to the right to forfeit a policy in existence, but is as to the right to renew a policy which has lapsed." With reference to the original contract expiring with August 1, 1906, and to the expiration of each renewal at the date specified in the renewals, respectively, there is no less clearness in the writings in the case at bar than there was with reference to the contract involved in the Kearney case.

In Roberts v. Aetna Life Ins. Co., 212 Ill. 382, a policy was involved which was issued to cover an aggregate term of one year. The year was divided, however, into four periods of unequal length. The policy was dated March 14, 1899, and after a provision that the insured was insured, for the premium first paid, for a period of two months, contained the following language: "and in consideration of the further cash payment on or before the expiration of two calendar months from date hereof, of a certain note for six 25-100 dollars, the insurance hereunder shall be in force for four calendar months from date of this policy; and in consideration of the further cash payment, on or before the expiration of three calendar months from date hereof, of a certain note for six 25-100 dollars, the the insurance hereunder shall be in force for seven calendar months from date of this policy" and similar verbiage with reference to the last period of five months. Roberts, the insured, failed to pay the notes for the second and following periods. He was injured July 10, 1899, and died on the 26th of that month. In that case it was held that the contract of insurance expired with each period and that the payment of the note for the second period was a prerequisite "to the existence of any insurance for the second period." The

case stood, the court said (p. 393) : "on a footing different from one in which failure to pay the premium merely gives the insurer the option to forfeit the policy and terminate the insurance. Here the insurance would not come into existence unless the payment was made, and to bring it into existence required some act on the part of the insured equivalent to the satisfaction of the note or an extension of the time of payment." This case in the Supreme Court affirmed Roberts v. Aetna Life Ins. Co., 101 Ill. App. 313, where the court said the contract provided for separate insurance covering separate periods of time and that there was no contract of insurance for the period following any date when a premium was due unless the premium then due were paid. The language of the original contract and of the several renewals that appear in the case at bar express expiration and total termination of the several contracts at the specified points of time much more clearly than the contract in the Roberts case. In Hartford Fire Ins. Co. v. Walsh, 54 Ill. 164, 167, it is held that "a renewal of a policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy." To the same effect as the Roberts and the Kearney cases we find Brady v. Northwestern Ins. Co., 11 Mich. 425, where the subject is well considered.

By such plan of insurance as that here involved the insured pays for his insurance from time to time in advance. He makes no promise to pay premiums to become due in the future. Certainly, under such plan, there is in no correct sense any "terms of its [the company's] policy requiring prompt payment of premiums" of which it must be assumed that there either has been or has not been a waiver as has been assumed by attorneys for plaintiff in their proposition above stated.

To evidence, or as tending to show, a waiver of any provision in the contract between the parties, the plain-

516     APPELLATE COURTS OF ILLINOIS.

MacArthur v. U. S. Health and Accident Ins. Co., 151 Ill. App. 507.

tiff cannot avail himself of what was said by Wyatt, prior to the delivery of the original policy here involved, for, as said by the Supreme Court in Continental Ins. Co. v. Ruckman, 127 Ill. 364, 373, "A waiver is the voluntary yielding up by a party of some existing right, but until the contract is consummated, the company has no rights which are susceptible of waiver, nor can any condition be properly said to be modified or stricken from a policy until there is a policy, that is, until after the terms of the contract have been agreed upon and the policy issued." Furthermore, whatever was said in the negotiations previous to the contract cannot be considered for the purpose of varying or changing the express terms of the contract. What Wyatt, the agent, is shown to have said when soliciting the policy must, under the law, be excluded and disregarded, in so far as it is at variance with the written contract or tends to show a waiver of any of the terms or provisions of the contract. The learned trial judge erred in not so excluding it.

Each renewal being a new and independent contract of insurance and plaintiff, when, on March 5, 1907, he was injured not having renewed his contract for insurance so as to cover that date, was then without any insurance. Twice before had plaintiff, according to the record herein, allowed periods of time to intervene when he did not carry accident insurance under the original contract herein because he failed to renew his contract, namely, during August and during January. Even if this were an instance where the doctrine of estoppel could be applied against defendant company the plaintiff totally failed, either upon the evidence in his behalf or upon all the evidence, to make out a case whereupon there could be a recovery against defendant. The trial court erred in refusing to direct a verdict for the defendant.

The judgment must be reversed and the cause will not be remanded.

*Reversed.*