## SHATTER v
## NATIONAL LIFE & ACCIDENT INS CO

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 29, 1935

Harry T. Rapport, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

* * *

## OPINION

By NICHOLS, J.

We hold that if acceptance of the premium after December 1st, and after the first day of the month in approximately 58 instances was all that the company did, then these payments of over-due premiums were referable to the express provisions of the policy. and the plaintiff would not be entitled to benefits for the injury in question.

We cite:

Smith v Sovereign Camp, Woodmen of the World, 179 Mo., 119; 135; 77 SW, 862.

Hawkins v Woodmen Accident Ass'n, 204 SW, 566.

Gagne v Massachusetts Bonding & Ins. Co., 78 N. H., 439; 101 Atl., 212.

National Life & Accident Co. v Reams (Tex. Civ. App.) 197 SW, 332;

McArthur v U. S. Health & Accident Ins. Co., 151 Ill. App., 507;

Popovitz v U. S. Health & Accident Ins. Co., 78 Misc. Rep., 148; 137 N. Y. Supp., 788.

We refer particularly to the case of Wiser v Central Business Men's Association, 219 SW, 102. The syllabus is as follows:

"Where the acceptance of overdue premiums could be referred to a compliance with a policy provision that the acceptance of past due premiums should not reinstate policy but should only cover sickness beginning more than ten days after such acceptance, the mere custom of receiving past due premiums would not of itself create a waiver of prompt payment of premiums."

But there is more than this in what was done by the company under the terms of the policy issued by it to the plaintiff. Plaintiff, subsequent to the time of the execution of the policy of insurance to him by the defendant and previous to the second day of December, 1931, had received three separate disabilities for which he was paid benefits by the company.

Defendant's Exhibit F, on the reverse side thereof, shows that on the 10th day of May, 1929, the defendant paid benefits to the plaintiff for five days disability, amounting to $10.71, because of a disability arising from an accident whereby a nail ran into the right foot of the plaintiff, the last day paid for being the 10th day of the month, from which we ascertain that the disability began on the 6th day of the month of May, 1929. Referring to the exhibits showing the date of the payment of the renewal premium for the month of May, 1929, we find that the renewal premium for this month was not paid until the 6th day of May, 1929, and therefore, under the written terms of the policy, the company was not required to pay for the disability for this injury because the same had not arisen after the payment of the premium.

Referring further to said defendant's Exhibit F, we find that on the 20th day of December, 1930, the defendant paid plaintiff benefits amounting to $15.00, for seven days disability arising from fever and grippe, the last day paid for being the 20th day of December, 1930, and therefore, the disability for which these benefits were paid began December 13, 1930. The record discloses that the premium was paid December 8th, 1930, and, therefore, the disability

for which these benefits were paid did not begin more than ten days after the payment of the premium. The provisions of the policy in question with reference to disability arising from sickness being that no such disability shall be paid for unless the sickness begins more than ten days after the date of the payment of the premium, so that if the company had not waived this provision of the policy, they were not required to pay this $15.00 because the disability arose within ten days after the acceptance of the premium by the company.

Again referring to defendant's exhibit F, we find that on the 9th day of March, 1931, the defendant paid benefits to plaintiff amounting to $15.00 for seven days disability arising from an ulcer of the cornea of the eye, the last day paid for being the 9th day of the month, but referring to the record of premium payment for this month of March, 1931, we find that the renewal premium was paid on the 2nd day of March, and therefore, if the company had not waived the provisions of its policy, it would not have been required to pay benefits in this instance because the sickness did not begin more than ten days after the acceptance of the premium. Thus we find that upon three separate and distinct occasions the defendant paid benefits to the plaintiff for disability sustained by him when the premium had not been paid on the first day of the month and when the disability arose at a time when the company was not required to pay the benefits except upon the theory that it was accepting the renewal premiums not with reference to the particular clause of the policy last quoted, but as a waiver of the prompt payment of the premiums.

An examination of plaintiff's Exhibits 2, 3 and 4, being the receipt books signed by the company's agents, acknowledging receipt of these sixty-five monthly payments, shows that each and all of these payments were made and receipted for the month in which the premium was paid, and it is particularly pertinent to note that the receipt given on December 14, 1931, shows that the $2.70 was paid for the "month of December." Each of the receipts given by the defendant to the plaintiff for the premiums paid show upon their face that the premiums are received in a different course than under the strict provisions of the policy.

It is further pertinent to note from defendant's exhibit F, that there is a notation on the reverse side thereof, showing that on December 9th, 1931, $15.00 is set forth

thereon for seven days disability, the last date paid for being December 9th, 1931, disability, left foot run over by wagon wheel. This is the very injury and disability for which the benefits are claimed in this case, and it is apparent that the company had made this notation on the back of its said Exhibit F, in accordance with its established policy and in its usual course of dealing with the plaintiff, and showing the acknowledgment by the company that it was not relying upon the particular clause of the policy which provides that it would be liable only for disability arising after the payment of the premium, as the premium was not paid in this instance for the month of December, 1931, until the 14th of that month. The action of the company in returning the premium to plaintiff on December 18, 1931, was an ineffective attempt upon the part of the company to relieve itself of liability because of its course of dealing with the plaintiff in this action.

The company could waive any provision of the policy which was for its own benefit and here we find by the repeated acts of the company it had waived prompt payment of the premium, and it is gathered from the whole transaction that so long as the premium was paid prior to the 15th day of the month, it was referable to and considered as the payment due on the first day of the month. The conduct of the company clearly indicated that when the premium was paid prior to the 15th day of the month, the same was accepted by the company as though it had been paid on the first day of the month, and the insured was entitled to benefits for sickness or injury occurring at any time within the month and not for injuries occurring subsequent to the payment or sickness beginning ten days after the payment of the premium.

It is the general rule with regard to policies requiring periodical payments of premiums and providing for a forfeiture for the failure to pay on the day named that if the insurer customarily receives over-due premiums from the insured and thereby induces the insured to believe that a forfeiture will not be incurred by a short delay in payment of premium, the forfeiture will not be declared, unless there is some specific provision of the policy to which the payment of the over-due premium is referable.

14 R.C.L., 1183.

Hawkins v Woodmen's Accident Ass'n, 204 SW, 566.

"Even where there is a provision in the policy that acceptance of a past due premium shall not be deemed the establishment of a custom, the customary receipt of a past due premium has been held to raise an estoppel."

Morgan v Insurance Co., 84 Pac., 412; 14 R.C.L., 1181.

"So when an insurer adopts a custom of accepting assessments on an accident policy, after due date, such belated payment is in regular order and is reinstatement so that the insurance is continuous."

Couch on Insurance, Vol. 3, p. 2248.

"Courts will be vigilant and quick to discover and to give effect to any act or circumstances from which may be fairly argued that the insurer has waived the right to strict and literal performance."

109 NW, 1099.

In this case, the company having done more than accept delayed payment of the monthly renewal premium, to-wit, having actually paid the benefits which it would not otherwise have been required to pay, except upon the basis that it had waived the right to strict and literal performance of the contract providing for payments on the first day of the month, it is reasonable to conclude that the plaintiff below had been induced to believe that the payment of the premium by him at any time before the 15th of the month kept his policy in full force and effect from the first day of the month; that he had a right to so believe from the conduct of the defendant below in paying the benefits above recited. As we have hereinabove said, the mere custom of receiving premiums after they were due did not, of itself, create such waiver, since, under such circumstances alone, the acceptance of the belated premiums could be referred to a compliance with the provision of the policy wherein it was provided that benefits should not be paid for accidents except those occurring after the date of the payment and that benefits should not be paid for sickness except for such sickness as began more than ten days after the payment of the premium, but when the company ignored this provision of the policy and paid benefits as though this provision was not incorporated therein, its conduct reasonably led the insured to believe that it had waived the requirement of prompt payment, and that payments made were not referable to the last above quoted provision of the policy.

There is no doubt that the company may,

by a due and reasonable notice, terminate a course of business as to receiving overdue premiums, relied on to establish a waiver by the assured, and insist that the contract stipulations as to payment be thereafter strictly complied with.

Phoenix M.L. Insurance Co. v Hinesley, 75 Ind.. :.

But to avoid the effect of an established custom to accept delayed payments without claiming a forfeiture, the company must give prior notice that it will insist upon prompt payment.

Supreme Lodge K.P. v Hooper, 282 SW, 867.

We have examined the record with reference to certain "warnings", so-called, given by the defendant to the plaintiff relative to the late payment of premium. We do not find that the matters testified to were sufficient to terminate the course of business of the company in receiving over-due premiums and in paying benefits, as the company continued to accept these payments and to pay benefits after the so-called "warnings" were given.

We find that the Common Pleas Court erred in finding for the defendant and in entering final judgment for the defendant, The National Life & Accident Insurance Company; that said judgment of the Common Pleas Court should be and the same is reversed and this cause remanded to the Municipal Court to carry into effect the final judgment of that court in favor of the plaintiff in error, Heim Shatter.

Judgment of the Common Pleas Court reversed.

CARTER and ROBERTS, JJ, concur.