## SCHWARTZ v AUTOMOBILE MUT INS CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2422.   Decided April 15, 1938

Hahn, Williams & Shermer, Youngstown, and Schermer & Goldstein, Youngstown, 1or appellee.

Henderson, Wilson, Wyatt & Ranz, Youngstown, for appellant.

## OPINION

By NICHOLS, J.

Plaintiff brought action in the Common Pleas Court of Mahoning County against The Automobile Mutual Insurance Company of Hartford, Connecticut, claiming that merchandise to the value of $957.10, including the amount of service charges thereon was stolen from his place of business on March 4, 1935.

Plaintiff's amended petition alleged that for a valuable consideration the defendant issued to him its policy, known as "bailee's customers policy", under the terms and conditions of which defendant

agreed to insure plaintiff, for account of whom it may concern, on all kinds of lawful goods accepted by the assured for cleaning, while situated in the premises occupied by plaintiff in the dry cleaning business and while being transported to and from plaintiff's customers, against loss or damage caused by theft, burglary, holdup, etc.; that between the hours of 7 A. M. of March 3, 1935, and approximately 7 A. M. of March 4, 1935, merchandise in plaintiff's place of business was stolen by parties unknown; that such merchandise had been left or brought to plaintiff's place of business for the purpose of being dry cleaned, etc., in the usual course of his business; that the value of the merchandise stolen was $892.00 and the servicing charges against the same were $65.10 making a total loss of $957.10; and that plaintiff gave defendant due notice of loss and the amount thereof within the time provided in the policy of insurance.

The amended petition further alleged:

"Plaintiff says that he has lawfully performed all conditions by him to be done and performed in the premises with the exception that he failed to make premium payments for the months of November, 1934, December, 1934, and January, 1935, in compliance with the terms of the policy. The plaintiff avers and declares that the course of business among and between the plaintiff, the defendant company and the agent of the defendant company constituted a waiver of the aforesaid terms of the insurance policy in reference to payment of premium on or before a date certain.

"Plaintiff further says that the aforesaid insurance contract was in full force and effect on the day and at the time of the theft; that the defendant has repudiated all liability by reason of the policy and refused to pay anything on account thereof."

Plaintiff prayed judgment against the defendant in the sum of $957.10, with interest from the date of the alleged theft, and costs of action.

For answer to the amended petition of plaintiff, defendant admits that plaintiff was engaged in the dry cleaning business as alleged; admits that the defendant is a corporation engaged in the insurance business; admits that on or about the 10th day of October, 1933, for a consideration, defendant issued to plaintiff its certain policy known as "Bailee's Customers Policy," under the terms and conditions of which

defendant agreed to insure plaintiff under certain conditions as stipulated and controlled and governed by the provisions of the policy.

Defendant's answer further alleged:

"Further, this defendant avers that it is not informed of any theft or burglary as claimed in plaintiff's amended petition or the amount of said theft or burglary, or the amount of any service charges, and to require strict proof thereof, denies the same.

"Defendant, further answering, avers that said policy by endorsement contained the following endorsement dated March 6, 1934, attached and made a part of this policy which is as follows:

"'It is hereby understood and agreed that endorsement attached to this policy and dated October 5, 1933, is entirely deleted and the following substituted therefor:

"'Regardless of anything to the contrary expressed in this policy it is agreed by the assured that should any monthly report not be rendered and the premium applying thereto not be paid to the company or its duly authorized agent on or before the thirtieth day of each month as respects gross receipts earned during the preceding month, this policy shall automatically terminate upon such date at noon and it is agreed by the assured that no further, notice of the termination and/or cancellation of this policy is or shall be necessary; the premium, however, which shall have been earned up to the time of such termination shall be due and payable.'

"Defendant further avers that said policy contained the following provisions which were a part of and controlling the provisions of said contract as follows:

"'THIS POLICY IS MADE AND ACCEPTED SUBJECT TO THE PROVISIONS, EXCLUSIONS AND CONDITIONS SET FORTH HEREIN OR ENDORSED HEREON, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have the power to waive or be deemed to have waived any provision or condition of this policy unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured and/or customer unless so written or attached.'

456

"Defendant, further answering, admits that plaintiff utterly failed and neglected to pay his premiums for the months of November, 1934, December, 1934, and January, 1935, in compliance with the terms of said contract and admits that at the time and date of the claimed theft as set forth in this plaintiff's amended petition this plaintiff was in arrears for these months.

"Defendant, further answering, avers that said amended petition does not state facts sufficient to constitute a cause of action.

"WHEREFORE, defendant avers that said plaintiff has violated the terms and conditions necessary for the maintenance of said policy and that said policy under the terms and provisions thereof became automatically cancelled and of no force and affect prior to the time of the claimed theft and burglary.

"WHEREFORE, defendant avers that it is in no manner liable to said plaintiff and prays that it may be allowed to go hence with its costs."

The cause came on for trial to the court and jury, and resulted in a verdict in favor of plaintiff and against defendant in the full amount prayed for in plaintiff's amended petition. Judgment having been entered upon the verdict, defendant prosecutes appeal on questions of law to this court.

Many grounds for the reversal of the judgment of the trial court are set forth in the assignment of errors, all of which we have considered but find that they may be properly grouped under three heads; first, that the trial court erred in failing to direct a verdict for the defendant at the close of plaintiff's case and at the close of all the evidence, and in this connection, of course, is considered the claim of defendant that the trial court erred in overruling its motion for new trial and for judgment notwithstanding the verdict; second, that the trial court erred in the admission of testimony on behalf of plaintiff as to the value of the merchandise claimed to have been stolen; and third, that the trial court erred in its charge to the jury wherein the court gave a definition of "waiver".

Defendant first moved for directed verdict upon the opening statement of counsel for plaintiff to the jury, which motion was overruled by the trial court. We need not consider this assignment of error, for the reason that counsel for defendant did not then elect to rely upon this motion but

after the overruling of his motion proceeded on behalf of the defendant to make his opening statement to the jury. At the close of plaintiff's case and after the overruling of the motion then made by defendant for directed verdict, defendant elected to offer no evidence in its behalf and renewed its motion for directed verdict upon all the evidence submitted in the case.

Plaintiff offered in evidence the insurance policy which is the basis of his action. This policy contained the following provision:

"The assured agrees to maintain and cause an accurate record of its business and on or before the 10th day of each month to report to this company the total amount of its gross receipts (either collected or uncollected) from its business during the preceding month or such time as is within the policy period.

"Rate per $100.00 of gross receipts 60c.

"Premiums so computed shall be due and payable on the tenth day of each month for the preceding month."

By an original endorsement dated October 5, 1933, and attached to the policy, it was provided as follows:

"Regardless of anything to the contrary expressed in this policy, it is agreed by the assured that should any monthly report not be rendered and the premium applying thereto not be paid to the company or its duly authorized agent on or before the due date stipulated herein, this policy shall be automatically terminated upon such due date at noon and it is agreed by the assured that no further notice of the termination and/or cancellation of this policy is or shall be necessary; the premium, however, which shall have been earned up to the time of such termination shall be due and payable."

This endorsement also provided in substance, that if in any month while the policy is in force the earned premium at the rate of 60c per $100.00 of gross receipts should not amount to at least $10.00 in any month, there shall nevertheless be due and payable to the company a minimum premium for the month of $10.00.

By endorsement dated March 6, 1934, and attached to the policy, it was stipulated that the endorsement dated October 5, 1933, "is entirely deleted", and there was substituted therefor the clause first quoted in defendant's answer, the substance of which is to the effect that the monthly reports,

shall be rendered and the premium applying thereto paid on or before the 30th day of each month as respects gross receipts earned during the preceding month, and in default thereof the policy shall automatically terminate upon such date at noon, and that no further notice of the termination or cancellation is or shall be necessary; the premium, however, which shall have been earned up to the time of such termination shall be due and payable. In other words, the endorsement of March 6, 1934, extended the date of making monthly reports and paying the monthly premium an additional twenty days over the time provided for in the original endorsement of October 5, 1933.

The policy also contained the quoted language set forth in defendant's answer to the effect that the policy is made and accepted subject to the provisions, exclusions and conditions set forth therein or endorsed thereon, together with such as may be endorsed or added thereto, and that no officer, agent or other representative of the company shall have the power to waive or be deemed to have waived any provision or condition of the policy unless such waiver, if any, shall be written upon or attached thereto, nor shall any privilege or permission affecting the insurance under the policy exist or be claimed by the assured unless so written or attached.

It is the contention of counsel for defendant that plaintiff having admitted in his amended petition that he failed to pay the premiums due under the policy at the time the same were due for the months of November and December, 1934, and January, 1935, and it being conceded that no written waiver as to the payment of such premiums upon the dates provided in the policy is attached thereto, it necessarily follows that plaintiff failed to establish any liability against the defendant under this policy and that the same automatically terminated because of failure to pay such premiums when due, in accordance with the provisions of the policy. It is also claimed on behalf of defendant that plaintiff has offered no evidence which would justify the court in submitting the cause to the jury upon the subject of a waiver of the above quoted provisions for automatic termination of the policy upon non-payment of the premiums at the time they were due.

On the other hand, the plaintiff insists, first, that defendant's answer does not contain any denial of the allegation in his amended petition to the effect "that the course of business among and between the plaintiff, the defendant company, and the agent of the defendant company constituted a waiver of the aforesaid terms of the insurance policy in reference to payment of premiums on or before a date certain."

We are unable to agree with counsel for plaintiff upon this latter contention for two reasons; first, because defendant's answer specifically sets forth the provisions of the policy, to which we have hereinbefore referred, and second, because the plaintiff in the opening statement of his counsel proceeded upon the theory that waiver of the terms of the policy with respect to payment of premiums had been denied, and further proceeded to offer testimony tending to show such waiver, and having gone to trial upon this issue and submitted evidence in support of his claim in that behalf, he is precluded from asserting that the issue is not made in the case.

The undisputed evidence in the case is to the effect that plaintiff gave immediate notice of loss to the local agent of the insurance company at Youngstown; that the agent caused an adjuster for the company to call upon the insured and furnish him proofs of loss, and gave him instructions and forms for obtaining sworn statements from the respective owners of the merchandise which had been stolen, but within a week after the theft, to-wit, on the 11th day of March, 1935, the company notified plaintiff, by letter, signed by the manager of its Marine Department in Cleveland, as follows:

"We regret very much to note that inasmuch as the premium under your policy for the months of November, December, January and February have not been paid the automatic cancellation clause set forth in the endorsement of March 6, 1934, attached to your policy became operative effective as of December 30, 1934.

"Although a formal notice of cancellation is not required by the terms of the above mentioned clause, we enclose herewith a memorandum form in order that your file may be complete. The premiums for the months of November and December have been earned under the policy and are, of course, now long past due. May we ask that you kindly remit these amounts at the earliest possible moment in order that the transaction may be concluded?".

With the above quoted letter of the insurance company, dated March 11, 1935, was enclosed the following "notice of cancellation:"

"To William Schwartz, d.b.a. Ohio Dry Cleaning Company, 700 South State Street, Girard, Ohio.

"You are hereby notified that the policy No. IMB-7622 dated October 5, 1935, issued to you by the Automobile Insurance Company of Hartford, Connecticut, is cancelled to take effect at noon, standard time, on the 30th day of December, 1934.

M. M. Brainard,

President.

"Countersigned and dated at Cleveland, Ohio, this 11th day of March, 1935.

W. G. Wilson,

General Agent-Branch Office."

There is no question raised by the insurance company as to any default or omission or failure upon the part of Mr. Schwartz to comply with the conditions of the policy other than in the matter of payment of premiums when due, and it is · conceded in the record that plaintiff furnished to the company within the time prescribed in the policy due proof of loss, and that the amount of loss shown in such proof is the amount ·claimed in the amended petition of plaintiff.

The evidence further shows that no complaint or objection of any kind was made by the insurance company as to the form or contents of the proof of loss furnished by plaintiff, nor did the company indicate any disagreement with plaintiff with relation to the amount of loss set forth in the proof of loss furnished to it by the insured, although the policy contained the following provision:

"PAYMENT OF LOSS—This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; * * *."

In view of this last quoted provision of the policy, it is the conclusion of this court that the fact that the company's adjuster called upon the insured and gave instructions and forms for the preparation of proof of loss is not evidence of any waiver upon the part of the company of its claim that the policy terminated on the 30th day of December, 1934, for non-payment of the premium earned for the month of November, 1934. However, the plaintiff gave evidence, as shown by the record, which. in .the .opinion of this court, required the trial court to submit to the jury the issue as to whether the company had in fact waived the requirement of its policy for the payment of premiums at a day certain and likewise waived the provision of the policy providing for automatic termination thereof upon default in payment of premiums at the time stipulated.

Plaintiff testified at the trial that during the period from October, 1933, when the policy was issued, to March 6, 1934, the date of the endorsement set forth in defendant's answer he had failed to pay premiums on or before the 10th day of the month following that upon which the premium was based, but he later paid such premiums and the company accepted the same about six times. This evidence is in no wise contradicted by the defendant, although we observe that if plaintiff were late six times in paying his premium between October, 1933, and March 6, 1934, he was late every month previous to the March 6 1934 endorsement. Indeed, there were only four premiums due under the original terms of the policy between the date of issuance and the date of March 6, 1934, endorsement, and. while it is apparent that plaintiff's testimony with reference to the number of times he was. late with payment of premiums during that period is not true, yet it nevertheless appears uncontradicted that he did not observe the terms of the policy with reference to payment of premiums on or before the 10th day of the month following that in which the premium was earned, payment thereof being late upon several occasions, but that the company did accept the premiums contrary to the provisions of the policy and recognized it as being in force by the fact that the company attached thereto the endorsement of March 6, 1934, thus indicating that the company did not intend that the automatic provisions of the policy were to be complied with by the insured.

Plaintiff further testified that after the endorsement of March 6th, 1934, wherein the time for payment of premiums was extended to the 30th day of the month next following that in which the premium was earned, he was late in paying his premium twice, and that the company later accepted payment of the premium at a later date than stipulated in the policy. This testimony is likewise uncontradicted by defendant.

Plaintiff further testified that after the endorsement of March 6, 1934, he regularly filed each month with the agent of the company at Youngstown a written report of his business for the preceding month

upon which the premiums were to be based, although at the time he made such reports for November and December, 1934, and January, 1935, he did not pay the premium due thereon, but that the company accepted these reports without indicating to him in any manner that the policy had terminated. The local agent of the defendant company testified that he received the monthly reports from the insured, and that he promptly forwarded the same, or caused the same to be forwarded to the company.

As stated above, the defendant offered no testimony upon the trial of the action and in no way contradicted the testimony of plaintiff and his witnesses as to the fact that he had regularly made reports as required by the policy, and the further fact that the company had, on six or eight occasions, accepted the premiums provided by the policy at dates later than stipulated in the automatic forfeiture of the policy.

It is further observed that the policy contains the following provision:

"CANCELLATION—This policy may be cancelled by either party by giving fifteen (15) days' written notice thereof to the other. Notice of cancellation mailed to the address of the assured stated in the policy shall be a sufficient notice."

It seems apparent that although the evidence relating to waiver upon the part of the company of the automatic provisions of this policy is not as clear and convincing upon this subject as could be desired, yet in the absence of any denial by defendant it is, we think, clear that the trial court committed no error in submitting this issue to the jury, and that its finding thereon is not manifestly against the weight of the evidence. As far as this feature of the case is concerned, we are satisfied that under the law of this state the insurance company could waive the provisions of the policy relating to automatic forfeiture for non-payment of premiums upon the stipulated due date thereof and elect to rely solely upon the clause which permitted it to cancel the policy at any time upon fifteen days' written notice to the assured.

In the case of **Shatter v National Life & Accident Insurance Company, 19 Abs 216,** this court held:

"An insurance company can waive any provision of a policy written for its own benefit." ... ..

Of course, we did not intend to convey the meaning that an insurance company can waive any of the positive requirements of our insurance code or other legislative enactments governing insurance contracts in the State of Ohio, but nothing in our Insurance Code or other legislative enactments is such as to prevent waiver by the company of the automatic forfeiture provisions herein referred to.

The matter of error in the trial court as to the admission of testimony on behalf of the plaintiff in relation to the amount of loss sustained by the theft has given this court great concern, and the judges are not in entire accord upon the proposition. As indicated, the merchandise covered by the insurance policy belonged to the customers of plaintiff and in order to establish the amount for which he was entitled to a verdict at the hands of the jury, plaintiff alone testified upon this subject.

The policy contained the following provisions:

"6. This company shall not be liable beyond the actual cash value of the property insured at the time any loss or damage occurs and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation however caused. In addition to the foregoing limits of liability this company will pay the assured's customary charges that have been earned on such lost or damaged goods.

"* * *

"8. Any claim for loss or losses happening at the same time as a result of one or more perils, amounting in the aggregate to $100.00 or less, may be adjusted by the assured, in full conformity with the conditions of this policy and statement of such claim promptly rendered to the company on blank provided by the company. All claims of this nature shall be paid as soon as practicable upon the receipt of satisfactory proofs of loss.

"* * *

"NOTICE AND PROOF OF LOSS—In the event of loss or damage, except as hereinafter provided, the assured shall forthwith give notice thereof in writing to this company or the authorized agent who issued this policy, and shall protect the property from further loss or damage; and within sixty days thereafter, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by the assured and/or customer, stating the knowledge and belief of the assured and/or customer as to the

time and cause of the loss or damage, the interest of the assured and/or customer and of all others in the property, description of each article damaged or destroyed including the original cost, date of purchase and depreciation; and the assured and/or customer, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company; and, as often as required, shall produce for examination all books of accounts, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

"It is a condition of this policy that failure on the part of the assured and/or customer to render such sworn statement of loss to the company within sixty days of the date of loss or damage (unless such time is extended in writing by the company) shall render such claim null and void.

"ADJUSTMENT OF LOSS—In case of a claim for loss or damage of goods and/or articles insured under this policy, the company reserves the right to adjust such loss or damage with the owner or owners of the property and the payment to such owners of the amount due from the company, for goods and/or articles lost or damaged, shall be in full satisfaction of any claim of the assured and/or customer for said property. If legal proceedings be taken to enforce a claim against the assured as respects any such property, the company reserves the right without expense to the assured to conduct and control the defense in the name and on behalf of the assured. This company will not be liable for loss or damage which has been compromised with others without first obtaining their consent.

"PAYMENT OF LOSS—This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for; and the sum for which this company is liable, pursuant to this policy, shall be payable thirty (30) days after the notice, ascertainment, estimate and satisfactory proof of the loss or damage herein required have been received by this company, including an award by appraisers when appraisal is required hereunder.

"APPRAISAL—In the event of disagreement as to the amount of loss or damage the same shall be determined by competent and disinterested appraisers before recovery can be had hereunder. The assured and/or customer and this company shall each select one, and the two so chosen shall then select a competent and disinterested umpire. Thereafter the appraisers together shall estimate and appraise the loss or damage, stating separately the sound value and damage; and failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss or damage; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

"* * *

"SUIT AGAINST COMPANY—No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured and/or customer with all the requirements herein contained, nor unless commenced within twelve months next after the occurrence of loss or damage, except that if said limitation of time (for institution of legal proceedings, as herein contained), is at variance with any specific statutory provision in relation thereto in force in the state in which this policy is made, issued or delivered, such specific statutory provision shall govern and supercede the condition in this contract inconsistent therewith."

Plaintiff's evidence indicates that he strictly complied with the above quoted provisions of the policy with reference to making proof of loss and furnishing the same to the company and, as indicated above, no objection was made by the company thereto before suit, nor did the company indicate any disagreement with the assured as to the amount of the loss.

We need not here determine whether plaintiff was required to furnish proof of loss under the circumstances whereby the company denied all liability on the policy and claimed that the policy had terminated before the loss occurred. Plaintiff did not produce any owner of the merchandise to testify as to the cash value thereof, but plaintiff testified that in accordance with the instructions of the company's adjuster he had contacted the people whose goods had been lost, and each customer had made an individual proof of loss upon a form submitted by the company's adjuster, each of these forms show-

ing the original cost of the merchandise, the amount of the depreciation and the loss, each customer stating where he got the merchandise, and all of these statements were submitted as a part of the proof of loss furnished to the company by plaintiff.

Plaintiff further testified that at the time he took the garments in for cleaning he kept a record of each garment, in triplicate, upon which the garment was described; that he had been in business two years and was familiar with prices and the value of goods. Being asked if he knew the cost price of the stolen articles, he answered that the cost price was given him by the customer and the place he bought it. Over the objection of defendant, plaintiff was then permitted to testify as to the description of articles contained in the proof of loss, the cost or original price, the depreciation, and the amount of loss computed between the customer and the insured on each article, being the same amount set forth in the proof of loss.

It seems to have been the opinion of the trial court that the plaintiff having complied with the provisions of the policy with reference to preparation and filing of proofs of loss and such proof of loss being in the possession of the company, and plaintiff having kept no copy thereof, he should be permitted to testify to the contents of the proof of loss, but the court finally instructed counsel for plaintiff to put the following question:

"Q. Do you feel you are qualified to give an opinion of the fair market value of any of this merchandise?

A. Yes, I do.

COURT: What in your opinion was the fair market value of the merchandise taken out of the store?

A. The amount of the claim, I don't remember.

COURT: You have to give us figures, you may refer to your records.

A. $892.00.

COURT: Let the record show an objection to the questions put by the court and overruled and exceptions.

Q. Without me reading each of these—it would take considerable time—these papers marked 1, 2, 3, and 4, do those contain the names, the depreciation, the cost and the loss of each item in your place at that time?

A. Of each item that was missing at that time.

COURT: And being copies of forms which he states he sent in to the company?

A. Yes.

COURT: My only reason for putting that is to have the record straight.

Mr. Wilson: Objection and exception.
* * *

Q. Was that a service cost?

A. $65.10.

Q. That would make the total amount of the loss how much?

A. $957.10."

On cross examination, counsel for defendant inquired of plaintiff as follows:

"Q. And you tell the jury you have an independent recollection of these particular garments?

A. I didn't try to recollect any I didn't lose.

Q. Do you mean to tell me you recollect independently what these garments looked like and the condition they were in from having seen them?

A. From that and seeing my customers a number of times and their garments.

Q. Do you have an independent recollection of any of these garments?

A. Oh, some of them.

Q. Do you know how many had holes in them?

A. That would depend on the age and the age is stated.

Q. You say you knew how many had holes in them?

A. Yes, because every hole was described on the invoice. We describe everything regarding the garment when taken in. .

Q. Did you check them over?

A. That's on the slip submitted to you."

While, at least, a majority of this court are of the opinion that the trial court erred in permitting plaintiff to testify to the cost value of the stolen articles as given to him by the customer, as well as to the amount agreed upon between the insured and the customer as to the depreciation and loss on the respective garments yet a majority of the court feel that by the efforts of the trial court combined with the cross examination by counsel for defendant, plaintiff was finally qualified to give an opinion as to the actual cash value of the stolen merchandise and that he gave his opinion that such value was the amount for which the jury returned its verdict, being the same amount designated in the proof of loss.

A majority of this court have arrived at the conclusion that whatever error oc-

curred in permitting the witness to testify to the cash value, depreciation and loss as determined between the customer and the insured, such error under all the circumstances was not so prejudicial to the defendant as to warrant a reversal and retrial of this cause on that ground. It seems apparent that the better practice would have been to require each customer to come into court and testify to the actual cash value of his own garment or garments, but it likewise seems apparent that if the customer had been brought into court he would have testified to a value at least as great as that which he claimed in his own statement of loss furnished on the forms provided by the company's adjuster, and while it is true that much scepticism may be held as to the reliability of the plaintiff's testimony as to his being able to recollect with any degree of certainty the character, quality and value of the identical garments stolen, yet he did so testify and gave his opinion of such value, and the weight of this testimony was for the jury.

These is another matter, perhaps not necessary to a decision of this case, which deserves some mention in this opinion; that is, whether the trial court was right in his conclusion that the proof of loss was proper to be admitted in evidence for the purpose of proving on the trial the actual cash value of the stolen merchandise. It seems clear that if the company, in accordance with the provisions of the policy which we last herein above quoted, had disagreed with the insured as to the amount of the loss, the insured would have been required to name an appraiser, the company an appraiser, the two appraisers an umpire, and the value of the goods determined by the appraisers and umpire; and in the absence of fraud, it seems that if the provisions of the policy with relation to establishing the actual cash value of the goods had been complied with the company would be estopped to deny that the amount fixed by the appraisers and umpire was the true amount of the loss. The question arises since the company did not disagree with the values set forth in the proof of loss, obtained in the manner and upon the forms furnished by the company, whether the company might not likewise be estopped from questioning the amount of the loss shown in such proof of loss.

Without determining this question, a majority of this court conclude that under all the circumstances shown by the record no error intervened prejudicial to the right of the insurance company with reference to the admission of incompetent testimony to which we have referred.

We refer to the following language in the syllabus in the case of The Cincinnati Street Ry. Co. v Hickey, 29 Oh Ap 399:

"3. Qualification of witness, called to give opinion evidence, affects only the weight, and not the admissibility, of the evidence.

"4. A reasonable amount of discretion may be exercised by trial court in permitting witnesses to give opinion evidence, and, unless evidence so admitted appears to have been prejudicial, verdict will not be set aside because of court's ruling on its admission."

The only remaining error to be considered is that relating to the definition given by the trial court to the jury as to what constitutes "waiver". The court stated to the jury as follows:

"A waiver is the act of waving or not insisting upon some right, claim, or privilege, a foregoing or giving up of some advantage which but for such waiver the party would have enjoyed. In other words, a waiver is the voluntary yielding up by a party of some existing right which that party has."

We are unable to find any prejudicial error in the charge as given.

Finding no prejudicial error in the record and that substantial justice has been done between the parties, the judgment of the Common Pleas Court is affirmed.

Judgment affirmed.

CARTER and BENNETT, JJ, concur.

## CONCURRING OPINION

By BENNETT, J.

I believe that the final objection to the testimony of the plaintiff as to the value of the stolen garments went to its admissibility and not just to its weight. I concede that the plaintiff allegedly qualified as an expert on value of garments of this sort, and that, as to all those garments about which he had any personal recollection or knowledge, his opinion of their value would have been admissible for such weight as the jury might see fit to attach to it. However, on cross-examination the

plaintiff disclosed that the opinion evidence which he had been allowed to give was based on a personal knowledge or recollection of "some of them" only. He disclosed that as to all the other garments his opinion was gased only on the hearsay of what he had been told. Inasmuch as there was nothing in the record from which to separate the good from the bad, the motion to exclude his opinion of the total loss should have been granted.

However, I realize fully that, because of the method in which this hearsay information had been gathered as a practical matter, there would be no substantial difference in the result if the plaintiff were compelled to bring in several dozen witnesses. I certainly, therefore, cannot certify that substantial justice was not done the defendant by the judgment below, despite what I regard as the admission of improper opinion evidence as to the loss sustained.

Having written this much, I might also add a word on the waiver question. This insurance policy was not a policy running for any fixed term, but by its terms was "continuous" from date of issue "until cancelled." The defendant relied primarily on the flat term of its waiver clause and on the argument which was, in substance, that any waiver by reason of prior conduct could not be any broader than the prior conduct. In other words, acceptance of premiums a few days late on prior occasions would not excuse non-payment for several months in the litigated instance. It seems to me that this argument misses the point. The language from which they claim that the policy had lapsed was to the effect that if the premium was not paid when due the policy "automatically terminated" without notice to anyone.

We concede that an insurance company might slip once, or it might slip twice. However, the record discloses that on numerous occasions this insurance company, by its conduct, demonstrated that this langnuage "automatically terminated" did not mean to them what they now say it means. Payments became overdue, the policy was not looked upon by the company as terminated, the premium was thereafter accepted, and the poilcy was not **reinstated** by notice or by any more formal agreement of reinstatement as it would have been if actually cancelled, and the parties proceeded exactly as if the policy had been in force all the time and had not been terminated. Whether you call it "waiver" or some other word, we believe that the conduct of the company could only be construed as showing that "automatically terminated" did not mean what it said, and that the defendant could not act for months as if default in payment did not terminate the policy and then rely on its literal language as a defense when, after loss, it turned out to be to its advantage to do so.

Since the conduct of the defendant has shown that this clause was not to be taken literally between the parties, we believe that the company must then be relegated to the other clause for its protection against non-payment, to-wit, the right to cancel upon notice.

Nor is this a responsibility which the company can avoid under its waiver clause by passing the only actual knowledge of tne time of payment back to Wilkoff, and having him pass it back to his office girl. The **company itself had** to know whether its policy was terminated or not, and act accordingly if the disputed clause meant what they now claim it means.